GMP:GKS/ANW
F#2016R01025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
IN THE MATTER OF AN APPLICATION OF THE
UNITED STATES OF AMERICA FOR A SEARCH           AFFIDAVIT
WARRANT FOR SAFE DEPOSIT BOX 959,
LOCATED AT CHASE BANK, 2754 HYLAN               Misc. No. 17-M-388
BOULEVARD, STATEN ISLAND, NY, WHICH IS
LEASED BY JOSEPH CALABRIA, INCLUDING
ANY LOCKED AND CLOSED CONTAINERS
FOUND THEREIN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

STATE OF NEW YORK           )
COUNTY OF KINGS             ) ss.:
EASTERN DISTRICT OF NEW YORK )

    MIKHAIL VINOPOL, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

    1.  I am a Special Agent with the DEA and have been involved in the investigation of numerous cases involving narcotics distribution. During my tenure with DEA, I have participated in narcotics investigation during the course of which I have: (a) conducted physical and wire surveillance; (b) executed search warrants at locations where drugs, drug proceeds, records of narcotics, money laundering transactions and firearms have been found; (c) reviewed and analyzed numerous taped conversations and records of drug traffickers; (d) debriefed cooperating drug traffickers; (e) monitored wiretapped conversations of drug traffickers and reviewed line sheets prepared by wiretap monitors; and (f) conducted surveillance of individuals engaged in drug trafficking and money laundering. Through my training, education and experience, I have become familiar with the manner in

which illegal drugs are imported and distributed, the method of payment for such drugs and the efforts of persons involved in drug trafficking to avoid detection by law enforcement. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including the defendant's criminal history record; and from reports of other law enforcement officers involved in the investigation.

2. I respectfully submit this affidavit in support of an application for warrants to search safe deposit box 959, which is located at a Chase Bank branch, 2754 Hylan Boulevard, Staten Island, NY, which is leased by JOSEPH CALABRIA (the "SUBJECT PREMISES").

3. As described further below, there is probable cause to believe the SUBJECT PREMISES each contain evidence of the following violations of law: possession of narcotics with intent to distribute, in violation of Title 21, United States Code, Section 841, narcotics distribution conspiracy, in violation of Title 21, United States Code, Section 846, possession of a firearm and/or ammunition by a felon, in violation of Title 18, United States Code, Section 922(g) and possession of a firearm in connection with a narcotics trafficking offense, in violation of Title 18, United States Code, Section 924(c) (the "Subject Offenses"), committed by JOSEPH CALABRIA, and others known and unknown. Such evidence is expected to be found among the items set forth in Attachments A and B this Affidavit.

4. Because this affidavit is being submitted for the limited purpose of establishing probable cause to search the premises described below, I have not included

herein the details of every aspect of the investigation.[1] Where actions, conversations and statements of others, and the contents of documents are related herein, they are related in substance and in part, except where otherwise indicated.

## THE SUBJECT PREMISES

5.      The SUBJECT PREMISES is safe deposit box 959, located at a Chase Bank branch, 2754 Hylan Boulevard, Staten Island, NY. As set forth below, this safe deposit box is leased by JOSEPH CALABRIA.

## PROBABLE CAUSE

### A. Background

6.      I have been involved in an investigation regarding the distribution of heroin by MICHAEL CALABRIA in the metropolitan New York City area as well as the illegal distribution of, among other drugs, oxycodone by JOSEPH CALABRIA in the New York City Area.

7.      On February 21, 2017, a grand jury in the Eastern District returned a two-count indictment charging, among others, JOSEPH CALABRIA with conspiracy to distribute and possess with intent to distribute oxycodone, in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846 (Count Two). (17-CR-91 (SJ).)[2]

---

[1] In the course of the investigation, law enforcement agents have also obtained orders authorizing the use of pen register and trap and trace devices, GPS location warrants for phones and GPS location warrants for a vehicle, among other investigative tools.

[2] The indictment was initially assigned to the Honorable Eric N. Vitaliano, United States District Judge, and subsequently assigned to the Honorable Sterling Johnson Jr., United States District Judge. The face of the indictment therefore reflects Judge Vitaliano's name although the matter is in fact before Judge Johnson.

3

8. On February 22, 2017, JOSEPH CALBRIA was arrested by law enforcement agents and arraigned later that day before the Honorable James Orenstein, United States Magistrate Judge. The defendant was ordered remanded and has been in the custody of the Bureau of Prisons since that date while awaiting further proceedings.

### B. Wiretap Orders

9. The balance of this affidavit will reference extensively evidence gleaned from judicially-authorized wiretaps. On September 12, 2016, the Honorable Eric N. Vitaliano, United States District Judge, signed an order authorizing the interception of wire communications over a cellular telephone used by MICHAEL CALABRIA in connection with this investigation. (16-MISC-2282.) Judge Vitaliano signed orders extending the wiretap order on October 12, 2016 and November 10, 2016. (16-MISC-2282.) Interceptions have ceased over MICHAEL CALABRIA's telephone. On November 7, 2016 and December 14, 2016, Judge Vitaliano signed orders authorizing the interception of wire and electronic communications over cellular telephones used by JOSEPH CALABRIA. (16-MISC-2282.) Interceptions have ceased over JOSEPH CALABRIA's cellular telephones. I have reviewed and analyzed the associated recordings.[3] All intercepted communications described herein were collected pursuant to one of Judge Vitaliano's orders.

### C. Probable Cause as to the SUBJECT PREMISES

10. Pursuant to a subpoena, I have obtained from Chase Bank the records of a safe deposit box contract for a safe deposit box rented by JOSEPH CALABRIA. These

---

[3] Because this affidavit is being submitted in support of an application for a search warrant, I have not included all of the pertinent calls intercepted pursuant to Judge Vitaliano's orders.

4

records have revealed that JOSEPH CALABRIA leased safe deposit box 959 (i.e. the SUBJECT PREMISES) on or about June 27, 2016 at branch number 154, which I know to be the Chase Bank branch that houses the SUBJECT PREMISES.

11. Based on my training and experience, the only individuals who are permitted to access a safe deposit box at a bank branch are the authorized lessee and individuals who have been granted authority to access the box on behalf of the lessee. Such a grant of authority, where given, is typically communicated to the bank in advance. A review of the bank records reveals no other individual who would have access to the SUBJECT PREMISES other than JOSEPH CALABRIA because JOSEPH CALABRIA is the only person listed on the signature card for the SUBJECT PREMISES.

12. As noted above, JOSEPH CALABRIA was arrested on February 22, 2017 and has been incarcerated since that date. Thus, your affiant believes that no one has had access to the SUBJECT PREMISES since at least February 22, 2017.

13. On February 21, 2017, the Honorable Viktor V. Pohorelsky, United States Magistrate Judge, issued a search warrant authorizing the search of 28 Primrose Place, Apt. A40, Staten Island, NY, which was JOSEPH CALABRIA's residence.[4] Agents executed this warrant in conjunction with the arrest of JOSEPH CALABRIA the next day.

---

[4] The affidavit in support of this search warrant is annexed hereto as Exhibit A and incorporated fully herein. Exhibit A contains a fuller discussion of the facts giving rise to believe that JOSEPH CALABRIA was engaged in the Subject Offenses prior to his arrest on February 22, 2017.

Among the items found in JOSEPH CALABRIA's apartment were oxycodone pills, almost $20,000 in cash[5] and a loaded .357 Taurus International, Model 650 revolver.[6]

14. As set forth below, the discovery of a substantial sum of cash and a firearm in JOSEPH CALABRIA's possession corroborates information that investigating agents gathered via the aforementioned judicially authorized wiretaps. In particular, the results of the search of JOSEPH CALABRIA's apartment corroborate intercepted calls in which agents believe that JOSEPH CALABRIA stated that he keeps large amounts of cash—believed to be proceeds of his narcotics trafficking activity—and one or more firearms and ammunition in "the bank." A review of bank records has revealed that JOSEPH CALABRIA typically keeps very little money in his bank accounts compared to sums such as the $20,000 recovered from his apartment and, as discussed below, even higher sums he discussed on intercepted calls. Furthermore, as set forth below, intercepted calls indicate that JOSEPH CALABRIA likely keeps or kept a firearm in "the bank." Based on my training and experience, the only place in a bank to store a firearm is a safe deposit box such as the SUBJECT PREMISES. Furthermore, based on my training and experience, individuals engaged in the Subject Offenses, including narcotics trafficking, typically do not keep proceeds or facilitating funds in their bank accounts because deposits and withdrawals of those funds may be tracked by the bank or subsequently by law enforcement authorities.

---

[5]     Based on facts gained during the investigation, JOSEPH CALABRIA has no apparent legitimate source of income other than public assistance benefits.

[6]     A review of criminal history record has revealed that JOSEPH CALABRIA has, among others, a 2002 felony conviction for robbery in the first degree, in violation of New York Penal Law 160.15.

6

Rather, such individuals often use a safe deposit box where they enjoy a measure of privacy while having a secure place to keep firearms or funds.

15. On November 13, 2016, law enforcement agents intercepted communications in which JOSEPH CALABRIA indicated to his girlfriend (or on-and-off-again girlfriend) DEVIDA LOMBARDO[7] and his brother MICHAEL CALABRIA that JOSEPH CALABRIA's apartment had been robbed. During a call in which all three participated, JOSEPH CALABRIA indicated that, among other items, $30,000 cash had been stolen from his apartment. The ensuing conversation included numerous references to what, based on my training and experience and facts gained during the investigation, are firearms and drug proceeds:

> i. Near the beginning of the call, LOMBARDO advised CALABRIA: "Yeah, listen to me carefully, you go get that gun. You take him in the house . . . listen to me, to Shy . . . you let off one shot, and you say 'Motherfucker, bring my back my fucking money, my fucking cigarettes, or the next one is going through your head.'" Based on my training and experience and facts gained during the course of the investigation, your affiant believes this exchange refers to using a firearm to threaten another individual. Based on other intercepted calls and physical surveillance, "Shy" is a nickname for one of JOSEPH CALABRIA's oxycodone customers. Your affiant therefore believes that DEVIDA LOMBARDO was speculating that "Shy" robbed

---

[7] LOMBARDO was indicted along with JOSEPH CALABRIA for the oxycodone-related narcotics offenses described above.

7

JOSEPH CALABRIA's apartment and was advising JOSEPH CALABRIA to threaten "Shy" with a gun already in JOSEPH CALABRIA's control.

ii. Later in the same conversation, LOMBARDO asked JOSEPH CALABRIA "Why didn't you have it locked up in that kitchen shelf? Money like that!" to which JOSEPH CALABRIA responded "I got most of the money in the bank. It was just . . . money," to which LOMBARDO responded "It doesn't mat . . . Joey, it's 30,000 fucking dollars. That's nothing to you? That's a lot of money to me." JOSEPH CALABRIA then replied "Still got over 100,000." Agents believe that JOSEPH CALABRIA is indicating that he has over $100,000 "in the bank." As set forth above, JOSEPH CALABRIA does not have a legitimate source of income beyond public assistance benefits. Agents therefore believe that the $100,000 "in the bank" refers to storage in the SUBJECT PREMISES and that this money represents proceeds from or facilitating funds for the Subject Offenses.

iii. Later in the same conversation, JOSEPH CALABRIA indicates to LOMBARDO and his brother MICHAEL CALABRIA that JOSEPH CALABRIA believes that either "Shy" or another individual committed the robbery. LOMBARDO then advises: "If you beat the fuck out of them, they going to tell you. As you beat the fuck out of them and torturing them. They going to fucking tell you. . . . That's the only way you do it, to crack their fucking head. . . . Absolutely torture them. Get

them in the fucking house and torture . . . I would do it. You're out of your mind not to. Don't you want your money back?" JOSEPH CALABRIA then states "I got something up my sleeve tomorrow . . . I have a good idea that I'm going to do tomorrow. I'm going to the bank and I'm going to get that thing. Call them and let them come here and I'm going to put it through his fucking head and tell him you were seen." Agents believe that this call reflects a discussion of using violence ("torture") to force one or more suspected perpetrators of the robbery to confess. Furthermore, agents believe that "that thing" refers to a firearm located at "the bank." Agents believe this refers to one or more firearms stored in the SUBJECT PREMISES.

16. References by JOSEPH CALABRIA to having a gun in "the box" continued after November 13, 2016. On December 3, 2016, agents intercepted a call between JOSEPH CALABRIA and LOMBARDO. JOSEPH CALABRIA stated "I'm going to get my gun out of the box, get ready. Uh, I want you out of the house. . . . Hurry up. Get yourself out of the house. I'm coming there with a gun and I got some guys coming over and uh . . . I don't want you to be there. Okay? I got fucked for the last time and uh . . . they coming over either I get my money back or I'm going to shoot him." Agents believe that "get my gun out of the box," when put in context with references to a gun in the bank during the November 13, 2016 calls described above, is a reference to JOSEPH CALABRIA going to the bank to get a firearm out of a safe deposit box. Based on my training and experience, individuals engaged in the SUBJECT OFFENSES, including narcotics trafficking, typically keep and use firearms in connection with their criminal activities for purposes that include

9

intimidation, protection or revenge. Thus, agents believe that "I got fucked" is a reference by JOSEPH CALABRIA to being wronged by another participant in his criminal activity. Agents further believe that JOSEPH CALABRIA intended to get a firearm from a safe deposit box for use in connection with the SUBJECT OFFENSES.

17. On January 3, 2017, JOSEPH CALABRIA spoke to an individual identified as "ELLEN" in the interception records. JOSEPH CALABRIA indicated that he and LOMBARDO had broken up and stated "That's when she said she was buying me a thing. That she never . . . You know. That I'm never gonna get one now. You know? That's out the window now." ELLEN responded "What was that?" to which JOSEPH CALBRIA replied "A gun. . . . Well five hundred dollars is five hundred dollars. I got one. So it don't matter." Agents believe that JOSEPH CALBRIA is indicating that he had asked LOMBARDO to buy him a firearm, but he expected that transaction would not occur. Agents further believe that "I got one. So it doesn't matter." is a reference to JOSEPH CALABRIA already having a gun so the failed transaction with LOMBARDO would not make a difference.

18. Based on my training and experiences, individuals engaged in the Subject Offenses who use safe deposit boxes, such as the SUBJECT PREMISES, typically keep proceeds or facilitating money, firearms or ammunition in the safe deposit box and do so on a persistent basis. In other words, a narcotics trafficker who uses a safe deposit box to keep money or guns will tend to use the safe deposit box for these purposes on a long-term basis. There is thus probable cause to believe that the SUBJECT PREMISES—which JOSEPH CALABRIA has been unable to access since February 22, 2017—continues to contain the items reflected in Attachment B.

## REQUEST TO SEARCH THE SUBJECT PREMISES
## AND ITEMS TO BE SEIZED

19. Based on the foregoing and my training and experience, it is my belief that there is probable cause that the SUBJECT PREMISES has been used to store instrumentalities, evidence, and fruits of violations of Title 21, United States Code, Sections 841 and 846, including, but not limited to narcotics and proceeds from narcotics sales, possession of a firearm and ammunition in furtherance of narcotics trafficking, in violation of Title 18, United States Code, Section 924(c), and possession of a firearm by a convicted felon, in violation of Title 18, United States Code, Section 922(g), and other items listed in Attachments A and B.

20. Based on my training and experience, I know that individuals engaged in narcotics trafficking and possession of a firearm in connection with narcotics trafficking:

    a. often maintain either on hand or in a secure place large amounts of United States currency in order to maintain and finance their ongoing narcotics business, or as proceeds of their business.

    b. often use firearms and ammunition, including, but not limited to, handguns, pistols, revolvers and other weapons, as well as records or receipts pertaining to firearms and ammunition, and often keep such items within either at hand or in a private and secure location such as the SUBJECT PREMISES.

    c. commonly hide contraband, including narcotics, firearms, proceeds of drug sales, as well as records of drug transactions in secure and private locations such as within the SUBJECT PREMISES and locked containers within the SUBJECT PREMISES for ready access and to conceal these items.

    d.  commonly maintain records reflecting names, nicknames, addresses and telephone numbers of both current and past associates involved in narcotics trafficking.

    e.  often have photographs, digital images, video movies, or photographic negatives of themselves, their co-conspirators, and property and/or assets purchased with drug proceeds. These photographs and videos are normally in the drug traffickers' possession and/or in their residence and/or in a secure location such as the SUBJECT PRMISES and are often times saved on cellular telephones.

  21.  Based upon my training and experience, I also know that individuals involved in narcotics trafficking frequently maintain custody of the items described above within closed and/or locked cabinets, briefcases, storage lockers, safes, and other containers kept within their places of business and residence or in secure locations such as the SUBJECT PREMISES. I therefore seek authorization to open any closed items and containers or to seize any such closed items and containers so that they may be opened if tools or other implements are required.

WHEREFORE, I respectfully request, pursuant to Rule 41 of the Federal Rules of Criminal Procedure, that a warrant be issued, authorizing the search and seizure of the items listed in Attachments A and B, all of which constitute evidence, fruits or instrumentalities of the Subject Offenses.

MIKHAIL VINOPOL
Special Agent, DEA

Sworn to before me this
1st day of May, 2017

THE HONORABLE RAMON E. REYES
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A
## DESCRIPTION OF THE SUBJECT PREMISES

The SUBJECT PREMISES is safe deposit box 959, located at a Chase Bank branch at 2754 Hylan Boulevard, Staten Island, NY. The safe deposit box is leased by JOSEPH CALABRIA.

## ATTACHMENT B
## ITEMS TO BE SEIZED FROM THE SUBJECT PREMISES

Items to be searched, located and seized from the SUBJECT PREMISES include but are not limited to the following, to the extent they comprise fruits, instrumentalities, and evidence of the manufacture, distribution, or possession with the intent to distribute controlled substances, and/or conspiracy to do the same, in violation of Title 21, United States Code, Sections 841 and 846, possession of a firearm in furtherance of narcotic trafficking, in violation of Title 18, United States Code, Section 924(c), and possession of a firearm and ammunition by a convicted felon, in violation of Title 18, United States Code, Section 922(g):

(a) Any and all narcotics or controlled substances;

(b) Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase and distribution of controlled substances;

(c) Proceeds of drug trafficking, including United States currency, precious metals, jewelry, and financial instruments, including certificates of deposit and stocks and bonds;

(d) Photographs, including still photographs, slides, negatives, digital images, video tapes, films, undeveloped film and the contents therein, in particular photographs of associates, possible co-conspirators, assets, and/or controlled substances;

(e) Address and/or telephone books, rolodex indices, and any pagers or cell phones that have the ability to store names, addresses, telephone numbers, pager numbers, fax numbers of co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a drug trafficking relationship exists;

(f) Firearms and ammunition, including but not limited to, handguns, pistols, revolvers, and other weapons, as well as, any records or receipts pertaining to firearms and ammunition; and

(g) Cellular telephones.